IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| ROSE MARIE CYRONIS, as Personal Representative of the Estate of Jeffery J. Cyronis, and CASSONDRA CYRONIS, as next friend of Jacquelyn M. Cyronis as Surviving Child,<br><br>    Plaintiffs,<br><br>vs.<br><br>MART MANAGEMENT, INC., GREENMAN TECHNOLOGIES, INC., and TIRES INTO RECYCLED ENERGY & SUPPLIES, INC.,<br><br>    Defendants.<br><br>PERSONNEL OPTIONS, INC., NATIONAL LIABILITY & FIRE INSURANCE CO., and ASSOCIATED CLAIMS ADMINISTRATORS, INC.,<br><br>    Intervenors. | * * * * * * * * * * * * | CASE NO. 3:09-cv-38 (CDL) |

O R D E R

This action arises from a workplace fire that killed Jeffery J. Cyronis ("Mr. Cyronis"). The fire occurred on the premises of Tires Into Recycled Energy & Supplies, Inc. ("T.I.R.E.S."). At the time of the fire, Mr. Cyronis was employed by Personnel Options, Inc. ("Personnel Options"), a temporary employment firm. He had been assigned to work for T.I.R.E.S. pursuant to a contract between Personnel Options and its client T.I.R.E.S. Mr. Cyronis's surviving child and estate received workers' compensation benefits from Mr. Cyronis's employer, Personnel Options. In the present tort action,

his child and estate seek damages under Georgia law for the alleged negligence of Defendants, including T.I.R.E.S.

T.I.R.E.S. seeks immunity under the exclusive remedy provision of Georgia's Workers' Compensation Act, O.C.G.A. § 34-9-11(a). Although T.I.R.E.S. did not pay the workers' compensation benefits in this case, Georgia law extends the workers' compensation tort bar to entities that obtained the services of the injured employee from a temporary help contracting firm if that firm pays workers' compensation benefits to the employee.  O.C.G.A. § 34-9-11(c). T.I.R.E.S. maintains that the undisputed facts establish that Personnel Options was a temporary help contracting firm under the plain language of the Georgia Workers' Compensation Act, that Personnel Options provided Plaintiffs with workers' compensation benefits, and that, therefore, neither Personnel Options nor T.I.R.E.S. can be sued in tort for injuries suffered by Mr. Cyronis. Accordingly, T.I.R.E.S. has filed a Motion for Summary Judgment (Doc. 68), which the Court grants for the following reasons.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary

judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

### FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed. Mr. Cyronis died of burns he sustained during a May 15, 2007 fire at his workplace, the T.I.R.E.S. rubber recycling plant in Jackson, Georgia (the "Fire"). Mr. Cyronis, who was thirty-nine years old when he died, was survived by his daughter, Jacquelyn M. Cyronis, a minor. At the time of the Fire and his death, Mr. Cyronis was an employee of Personnel Options, a firm that provided temporary workers to companies such as T.I.R.E.S. Pursuant to its contract with T.I.R.E.S., Personnel Options assigned Mr. Cyronis to the T.I.R.E.S. job where he worked as a maintenance technician/mechanic. (Ex. F to T.I.R.E.S.'s Br. in Supp. of Mot. for Summ. J., Edwards Aff. ¶ 16, July 22, 2009 [hereinafter Edwards Aff.]; Edwards Dep. 54:16-19, Aug. 18, 2009.)

Personnel Options describes itself as a "human resource management firm." (Ex. 7 to Edwards Dep., Personnel Options, Inc. Marketing Brochure.) It screens, interviews, and hires its own employees. (Edwards Aff. ¶ 5.) It then provides its employees as workers to third party clients. (*Id.* ¶ 7.) The third party clients

3

pay Personnel Options for the service it provides, while Personnel Options pays its employees from its own funds for the work they perform for the third party clients. (*Id.* ¶ 9; Edwards Dep. 26:12-17.) Personnel Options's third party clients do not pay Personnel Options's employees directly for the work they perform, and the workers Personnel Options provides to its third party clients remain Personnel Options employees at all times. (Edwards Aff. ¶¶ 8-9.) Personnel Options pays its employees a set amount and then bills its third party clients a different amount that includes state and federal taxes, Medicare costs, and workers' compensation insurance. (Edwards Dep. 60:4-7.)

Consistent with its standard procedure, Personnel Options provided workers' compensation insurance coverage for all of its employees, including Mr. Cyronis, on May 15, 2007. (Edwards Aff. ¶ 22; Edwards Dep. 26:18-21, 78:18-22.) Since Mr. Cyronis's death arose out of and in the course of his employment, Personnel Options and its insurers paid workers' compensation benefits, including medical expenses, dependency benefits, and burial expenses, to Mr. Cyronis's daughter, Jacquelyn Cyronis, and Mr. Cyronis's estate. (Edwards Aff. ¶ 23.) T.I.R.E.S. did not pay workers' compensation benefits to Mr. Cyronis, Jacquelyn Cyronis, or Mr. Cyronis's estate.

## DISCUSSION

Georgia workers' compensation law provides for certain specified liability against an employer for an employee's injuries suffered on the job, regardless of fault. In exchange for these benefits, the

4

legislature has provided that recovery under the workers' compensation statute shall be the exclusive means of recovery by an employee against his employer for workplace injuries. *E.g.*, *Doss v. Food Lion, Inc.*, 267 Ga. 312, 312-13, 477 S.E.2d 577, 578 (1996) (noting that where Georgia's Workers' Compensation Act is applicable, it is "the exclusive remedy for the employee against the employer").

The Georgia Code provides:

> The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee . . . at common law or otherwise, on account of such injury . . . ; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor[.]

O.C.G.A. § 34-9-11(a).

This immunity extends to businesses using the employees of temporary help contracting firms. The Code provides:

> The immunity provided by this subsection shall apply and extend to the businesses using the services of a temporary help contracting firm, as such term is defined in Code Section 34-8-46 . . . when the benefits required by this chapter are provided by . . . the temporary help contracting firm . . . or the business using the services of . . . such firm . . . . A temporary help contracting firm . . . shall be deemed to be a statutory employer for the purposes of this chapter.

O.C.G.A. § 34-9-11(c).

O.C.G.A. § 34-8-46 defines "temporary help contracting firm" as:

> [A]ny person who is in the business of employing individuals and, for compensation from a third party, providing those individuals to perform work for the third party under the general or direct supervision of the third party. Employment with a temporary help contracting firm is characterized by a series of limited-term assignments of an employee to a third party, based on a contract between the temporary help contracting firm and the third party.

5

> A separate employment contract exists between the temporary help contracting firm and each individual it hires as an employee. Completion of an assignment for a third party by an employee employed by a temporary help contracting firm does not, in itself, terminate the employment contract between the temporary help contracting firm and the employee.

The plain language of the Georgia statute makes it clear that if Personnel Options was a temporary help contracting firm that provided its employee, Mr. Cyronis, to T.I.R.E.S., then Plaintiffs cannot recover in tort from T.I.R.E.S., as long as either Personnel Options or T.I.R.E.S. paid workers' compensation benefits for Mr. Cyronis's on-the-job injury. It is undisputed that Mr. Cyronis was an employee of Personnel Options when he suffered his fatal injuries at the T.I.R.E.S. rubber recycling plant. Further, Plaintiffs concede that Personnel Options has paid workers' compensation benefits because of Mr. Cyronis's death. Therefore, the only remaining issue to be determined is whether Personnel Options is a "temporary help contracting firm" as defined in O.C.G.A. § 34-8-46.

The evidence in the record, construed in favor of Plaintiffs, establishes the following. According to Personnel Options's vice president, Allen Edwards, "Personnel Options, Inc. is in the business of providing workers to its third party Clients for compensation." (Edwards Aff. ¶ 7; *see id.* ¶ 9 ("Personnel Options, Inc. is compensated by its third party Clients for the service it provides, and Personnel Options, Inc. pays its employees for the work they

6

perform for its Clients.").)[1]  While performing jobs for clients, Personnel Options employees work under the direct supervision of the third party clients.  (*Id.* ¶ 11; Edwards Dep. 36:1-4, 72:13-19.)

In the present case, Personnel Options provided its employee, Mr. Cyronis, to T.I.R.E.S. to work as a temporary maintenance technician/mechanic at the T.I.R.E.S. facility. (Edwards Aff. ¶¶ 16, 19; Edwards Dep. 54:16-19.)  The record does not support Plaintiffs' argument that the assignment was indefinite and thus disqualified Personnel Options as a "temporary help contracting firm."  (*See* Edwards Aff. ¶ 10 (stating that Personnel Options workers are provided to clients "for a limited term assignment, or a series of limited term assignments"); *see* Edwards Dep. 25: 13-14 ("Probably 99 percent of our business is temporary labor."); *see also* Ex. B to Edwards Aff., Terms and Conditions of Personnel Options Invoice (identifying Personnel Options as the "temporary personnel service" and describing invoiced employees, including Mr. Cyronis, as "temporary employee[s]").)  It is clear that Personnel Options employees remain employees of Personnel Options during their

---

[1] The Court rejects Plaintiffs' contention that Edwards disavowed his affidavit in his deposition. (Pls.' Resp. to T.I.R.E.S.'s Mot. for Summ. J. 8-9.)  To the contrary, Edwards confirmed during his deposition that he read the affidavit, discussed it with his attorney, and made changes to the document before signing it.  (Edwards Dep. 53:23-54:15.)  Far from contradicting his affidavit, Edwards reaffirmed that the statements he swore to in his affidavit remained true and correct to the best of his knowledge.  (*Id.* at 63:2-25.)  Edwards's deposition testimony did not contradict his affidavit statement that Personnel Options employees typically work limited term assignments or his affidavit statement that Personnel Options maintains employment agreements with its employees that are separate from the agreements Personnel Options maintains with its clients.

assignments (Edwards Aff. ¶ 16; Edwards Dep. 64:8-14); they work pursuant to agreements between Personnel Options and the third party client (*e.g.*, Ex. A to Edwards Aff., Invoice [hereinafter Invoice], May 20, 2007); and they have separate employment agreements with Personnel Options (Edwards Aff. ¶ 6; Edwards Dep. 69:8-14). Therefore, by their very nature, the temporary assignments Personnel Options employees work are limited to the duration of the business relationship between Personnel Options and its third party client, regardless of the actual temporal duration of the assignment.

In return for being provided with workers pursuant to their contract with Personnel Options, T.I.R.E.S. compensated Personnel Options for Mr. Cyronis's services. (*See* Invoice.) It is clear that Mr. Cyronis performed his work for T.I.R.E.S. under T.I.R.E.S.'s direct supervision. (Edwards Aff. ¶ 19; *see* Edwards Dep. 48:11-17, 72:20-23, 79:13-81:18.) Therefore, under the plain terms of O.C.G.A. § 34-8-46, Personnel Options meets the definition of a "temporary help contracting firm" since it is "in the business of employing individuals [such as Mr. Cyronis] and, for compensation from a third party [such as T.I.R.E.S.], providing those individuals to perform work for the third party under the general or direct supervision of the third party." O.C.G.A. § 34-8-46; *see also Lambert v. Briggs & Stratton Corp.*, No. Civ.A. CV604-016, 2006 WL 156875, at *2 (S.D. Ga. Jan. 19, 2006) (finding temporary agency met O.C.G.A. § 34-8-46 definition of "temporary help contracting firm" where it provided its employee to client and employee worked under

client's general supervision), *aff'd*, 188 F. App'x 887 (11th Cir. 2006) (per curiam).

Because the evidence viewed in the light most favorable to Plaintiffs shows that Personnel Options is a "temporary help contracting firm" and since it is undisputed that Personnel Options paid workers' compensation benefits on behalf of Mr. Cyronis, T.I.R.E.S. is entitled to the tort immunity provided by the Workers' Compensation Act exclusive remedy provision, O.C.G.A. § 34-9-11(a). O.C.G.A. § 34-9-11(c).  Accordingly, Plaintiffs' tort claims are barred by O.C.G.A. § 34-9-11(a) & (c).

## CONCLUSION

For the reasons set forth above, the Court grants T.I.R.E.S.'s Motion for Summary Judgment (Doc. 68) as to Plaintiffs' claims. The remaining parties shall submit by February 4, 2010 an amended proposed scheduling order.

IT IS SO ORDERED, this 21st day of January, 2010.

                                          S/Clay D. Land
                                              CLAY D. LAND
                              UNITED STATES DISTRICT JUDGE

9